IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------- x
In re:                      :    Chapter 11

INTERNATIONAL GARDEN PRODUCTS, : 
INC., et al,[1]                :    Case No. 10-13207 (KJC)

       Debtors.         :    Jointly Administered

                                :    **RE: D.I. 14**

----------------------------------------------------- x

**INTERIM ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363 AND 364
AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTORS OF POST-
PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL SECURED
INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING
LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS
PURSUANT TO 11 U.S.C. SECTION 363 AND PROVIDING FOR ADEQUATE
PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND (5) SCHEDULING A
FINAL HEARING**

THIS MATTER having come before the United States Bankruptcy Court for the District

of Delaware (the "**Court**") upon the Motion (the "**DIP Motion**") of International Garden

Products, Inc. ("**IGP**"), Iseli Nursery, Inc. ("**Iseli**"), Weeks Wholesale Rose Grower ("**Weeks**"),

California Nursery Supply ("**California Nursery**"), and Old Skagit, Inc, a Delaware corporation

("**Old Skagit**"), each as debtor and debtor-in-possession (collectively, the "**Debtors**", and

individually, a "**Debtor**") in the above captioned Chapter 11 Cases (the "**Cases**") seeking,

among other things, the entry of an interim order (this "**Interim Order**") authorizing the Debtors

to:

(i) Obtain credit and incur debt pursuant to Sections 363, 364(c) and 364(d) of Title 11 of

the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "**Bankruptcy Code**"), on an

---

[1] The Debtors are the following entities (followed by the last four digits of their tax identification numbers): International Garden Products, Inc. (5711), Weeks Wholesale Rose Grower (9716), California Nursery Supply (6835), Iseli Nursery, Inc. (6206), and Old Skagit, Inc. (2996).

interim basis for a period (the "**Interim Period**") from the commencement of the Cases through and including the date of the Final Hearing (as defined below) up to a maximum amount of $4,750,000 on terms and conditions more fully described herein and pursuant to the DIP Credit Agreement (defined below), secured by first priority, valid, priming, perfected and enforceable liens (as defined in Section 101(37) of the Bankruptcy Code) on property of the Debtors' estates pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and with priority as to administrative expenses, as provided in Section 364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein;

(ii) (a) Establish that financing arrangement (the "**DIP Facility**") pursuant to: (I) that certain Senior Secured, Super-Priority Post-Petition Credit Agreement, substantially in the form filed of record in the Cases (as it may be amended, modified or supplemented and in effect from time to time as provided for therein, the "**DIP Credit Agreement**")[2] by and among IGP, Iseli and Weeks, as Borrowers, California Nursery and Old Skagit, as Guarantors, and Harris N.A., as DIP Agent (in such capacity, the "**DIP Agent**"), for itself and the lenders party thereto (the "**DIP Lenders**" and together with the DIP Agent, the "**DIP Secured Parties**"); and (II) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Secured Parties, including, without limitation, security agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("**UCC**") financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (as they may be amended, modified or supplemented and in effect from time to time as provided for therein, and together with the DIP

---

2   Except as otherwise defined herein, all defined terms used herein shall have the meanings ascribed thereto in the DIP Credit Agreement.

Credit Agreement, the "**DIP Credit Loan Documents**"); and (b) incur the "**Post-Petition Obligations**" under and as defined in the DIP Credit Agreement;

(iii) Authorize the use of the proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Credit Agreement) in a manner consistent with the terms and conditions of the DIP Credit Agreement and in accordance with the Budget and Cash Flow Forecasts (as defined in the DIP Credit Agreement and below) (subject to the variances as described therein and in Section 3(a) of this Interim Order), solely for (a) working capital and general corporate purposes to the extent set forth in the Budget and Cash Flow Forecasts, (b) payment of costs of administration of the Cases, to the extent set forth in the Budget and Cash Flow Forecasts, (c) payment of draws made under Letters of Credit pursuant to the terms of the DIP Credit Agreement, (d) payment of reasonable professional fees of the DIP Agent and the Pre-Petition Agent related to the Post-Petition Obligations and the Pre-Petition Liabilities (as defined below), (e) the payment of interest, fees and expenses owing to the DIP Secured Parties under the DIP Credit Loan Documents, (f) payment of allowed fees and expenses of Case Professionals (as defined below), subject to the provisions of Paragraph 8 of this Interim Order, and (g) payment of Hedging Liability (as defined in and outstanding under the Pre-Petition Loan Documents) and the payment of Funds Transfer and Deposit Liability (as such term is defined below) (whether outstanding under the Pre-Petition Loan Documents as a Pre-Petition Liability (as defined below) or incurred on or after the Petition Date as a Post-Petition Obligation), as adequate protection to the Pre-Petition Secured Parties (as defined below), and as set forth in the Budget and Cash Flow Forecasts (as defined below);

---

(iv) Grant, pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, to the DIP Agent (as collateral agent for the benefit of the DIP Secured Parties) first priority priming, valid, perfected and enforceable liens, subject only to the Carve-Out (as defined in Section 8 below) and the Permitted Prior Encumbrances (as defined below), upon all of the Debtors' real and personal property as provided in and as contemplated by this Interim Order, the DIP Facility and the DIP Credit Agreement;

(v) Grant, pursuant to Section 364(c)(1) of the Bankruptcy Code, the DIP Agent (as collateral agent for the benefit of the DIP Secured Parties) superpriority administrative claim status in respect of all Post-Petition Obligations, subject only to the Carve-Out as provided herein;

(vi) Authorize the use of "cash collateral" as such term is defined in Section 363 of the Bankruptcy Code (the "**Cash Collateral**") in which the Pre-Petition Agent and the Pre-Petition Secured Parties (each as defined in the DIP Credit Agreement) have an interest;

(vii) (A) grant the Pre-Petition Agent (or the DIP Agent, as collateral agent therefor, in each case for the benefit of the Pre-Petition Secured Parties) (each as defined below) Pre-Petition Replacement and Pre-Petition Superpriority Claims (each as defined below), to the extent of any diminution in the value of the Pre-Petition Secured Parties' interest in the Pre-Petition Collateral (as defined below) as adequate protection for the granting of the DIP Liens (as defined below) to the DIP Agent, the use of Cash Collateral, the subordination to the Carve-Out, and for the imposition of the automatic stay, and (B) make the Adequate Protection Payments (as defined below);

(viii) Vacate and modify the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility and this Interim Order;

(ix) Schedule a final hearing (the "**Final Hearing**") to consider entry of an order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing; and

(x) Waive any applicable stay (including under Rule 6004 of the Federal Rules of Bankruptcy Procedure) and provide for immediate effectiveness of this Interim Order.

The Court having considered the DIP Motion, the Declaration of Jay Hulbert, CEO, in support of the Debtors' first day motions and orders, the exhibits attached thereto, the DIP Facility and the DIP Credit Agreement, and the evidence submitted at the hearing on this Interim Order (the "**Interim Hearing**"); and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), due and proper notice of the DIP Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded on October 6, 2010; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and equity holders, and is essential for the continued operation of the Debtors' business; and it further appearing that the Debtors are unable to secure (i) unsecured credit for money borrowed allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code, (ii) credit for money borrowed with priority over any or all administrative expenses of the

-5-

kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, (iii) credit for money borrowed secured solely by a lien on property of the estate that is not otherwise subject to a Lien (as defined in the Pre-Petition Credit Agreement), or (iv) credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien; and there is adequate protection of the interests of holders of Liens on the property of the estate on which Liens are to be granted; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING PRELIMINARY FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      Petition Date. On October 4, 2010 (the "**Petition Date**"), the Debtors each filed a voluntary petition under Chapter 11 of the Bankruptcy Code with the Court. The Debtors have continued in the management and operation of their business and property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases, nor has an official committee of unsecured creditors (the "**Creditors' Committee**") been appointed as of the date hereof.

B.      Jurisdiction and Venue. Pursuant to 28 U.S.C. §§ 157(b) and 1334, this Court has jurisdiction over this proceeding and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (D), (G), (K), and (O). Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Notice. The Interim Hearing has been held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 9013-1. Notice of the Interim Hearing and the emergency

relief requested in the DIP Motion has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery on October 4, 2010 to certain parties in interest, including: (i) the Office of the United States Trustee; (ii) the Debtors' thirty (30) largest unsecured creditors; (iii) counsel to the Pre-Petition Agent (as defined below); (iv) counsel to the proposed DIP Agent; (v) all secured creditors of record; (vi) the Office of the United States Attorney General for the District of Delaware; and (viii) the Internal Revenue Service. Under the circumstances, such notice of the Interim Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with Sections 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), 4001(c), 4001(d) and the Local Rules.

D. <u>Debtors' Acknowledgments and Agreements</u>. Without prejudice to the rights of parties in interest as set forth in Paragraph 7 below, each Debtor admits, stipulates, acknowledges, and agrees to the following (the "**Debtors' Stipulations**"):

(i) <u>Pre-Petition Credit Agreement</u>. Prior to the Petition Date, the Debtors entered into a certain Fifth Amended and Restated Agreement dated as of December 22, 2005 (as amended and in effect, the "**Pre-Petition Credit Agreement**" and together with all other agreements and documents executed and delivered in connection therewith, the "**Pre-Petition Loan Documents**") with, among others, Harris N.A., as Administrative Agent (in such capacity, the "**Pre-Petition Agent**") for certain "Lenders" (as defined therein) (the "**Pre-Petition Lenders**", and together with the Pre-Petition Agent, collectively, the "**Pre-Petition Secured Parties**") pursuant to which the Pre-Petition Secured Parties extended a working capital facility providing for revolving credit loans and a term loan facility, which obligations are jointly and severally owing by the Debtors and are also guaranteed by Old Skagit.

(ii) <u>Pre-Petition Liabilities Amount</u>. The Debtors were indebted to the Pre-Petition Secured Parties without claim, defense, counterclaim, recoupment, or offset in the approximate principal sum of $30,669,990.16 in "**Revolving Loans**" (as defined in the Pre-Petition Credit Agreement), and $13,000,000 in "**Term Loans**" (as defined in the Pre-Petition Credit Agreement), together with all other financial accommodations or services (including, without limitation, any obligations relating to cash management, depository, investments, hedging arrangements and other banking and financial services provided by the Pre-

Petition Secured Parties or their affiliates) accrued interest, costs, fees, and professional fees and expenses (including attorneys fees and legal expenses), and all other "**Obligations**", "**Hedging Liability**", and "**Funds Transfer and Deposit Account Liability**" (each as defined in the Pre-Petition Credit Agreement) (collectively, hereinafter the "**Pre-Petition Liabilities**").

(iii)    <u>Pre-Petition Collateral</u>. To secure the Pre-Petition Liabilities, the Debtors granted security interests and liens (collectively, the "**Pre-Petition Liens**") to the Pre-Petition Secured Parties upon substantially all of the Debtors' assets and property (including real property, personal property, and fixtures), including, without limitation, (a) Accounts; (b) Chattel Paper; (c) Instruments (including, without limitation, all Promissory Notes); (d) Documents; (e) General Intangibles (including, without limitation, all Payment Intangibles, Software, patents, trademarks, copyrights and other intellectual property rights, and all application, registrations and licenses therefor, all goodwill of the business connected therewith or represented thereby, and all tax refunds); (f) Letter-of-Credit Rights; (g) Supporting Obligations; (h) Deposit Accounts; (i) Investment Property (including, without limitation, all certificated and uncertificated Securities, Securities Accounts, Security Entitlements, Commodity Accounts, and Commodity Contracts); (j) Inventory and Farm Products; (k) Equipment (including, without limitation, all software, whether or not the same constitutes embedded software, used in the operation thereof); (l) Fixtures; (m) Commercial Tort Claims; (n) Rights to merchandise and other Goods (including rights to returned or repossessed Goods and rights of stoppage in transit) which is represented by, arises from, or relates to any of the foregoing; (o) Monies, personal property, and interests in personal property of such Debtor of any kind or description now held by any Pre-Petition Secured Party or at any time hereafter transferred or delivered to, or coming into the possession, custody or control of, any Pre-Petition Secured Party, or any agent or affiliate of any Pre-Petition Secured Party, whether expressly as collateral security or for any other purpose (whether for safekeeping, custody, collection or otherwise), and all dividends and distributions on or other rights in connection with any such property; (p) Supporting evidence and documents relating to any of the above-described property, including, without limitation, computer programs, disks, tapes and related electronic data processing media, and all rights of such Debtor to retrieve the same from third parties, written applications, credit information, account cards, payment records, correspondence, delivery and installation certificates, invoice copies, delivery receipts, notes and other evidences of indebtedness, insurance certificates and the like, together with all books of account, ledgers, and cabinets in which the same are reflected or maintained; (q) real property and interests in real property, including leasehold interests; (r) Accessions and additions to, and substitutions and replacements of, any and all of the foregoing; and (s) Proceeds and products of the foregoing, and all insurance of the foregoing and proceeds thereof (collectively, the "**Pre-Petition Collateral**"), with priority over all other liens, with the sole exception of any liens otherwise expressly

permitted to have priority over the Pre-Petition Liens in accordance with the Pre-Petition Credit Agreement and other applicable documents, and solely to the extent any such permitted liens are valid, properly perfected, unavoidable, and senior to the Pre-Petition Liens (referred to herein as the "**Permitted Prior Encumbrances**"). To avoid any doubt, the term "Permitted Prior Encumbrances" shall not include, and specifically excludes, the Pre-Petition Liens, which pre-petition liens and claims are to be subordinated to, and junior to, the liens and claims of the DIP Secured Parties.

(iv)     Pre-Petition Liens.  (a) As of the Petition Date, (i) the Pre-Petition Liens are valid, binding, enforceable, and perfected first-priority liens, subject only to any Permitted Prior Encumbrances, and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (ii) the Pre-Petition Liabilities constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Pre-Petition Credit Agreement (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), and no offsets, defenses or counterclaims to any of the Pre-Petition Liabilities exists, and no portion of the Pre-Petition Liabilities is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Pre-Petition Liabilities constitute allowable secured claims, and (b) on the date that this Interim Order is entered, the Debtors have waived, discharged and released the Pre-Petition Secured Parties, together with their affiliates, agents, attorneys, officers, directors and employees, of any right the Debtors may have (x) to challenge or object to any of the Pre-Petition Liabilities, (y) to challenge or object to the security for the Pre-Petition Liabilities, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Pre-Petition Credit Agreement or otherwise.

(v)     No Defenses.  The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Liabilities, the Pre-Petition Credit Agreement, the Pre-Petition Loan Documents or the Pre-Petition Liens, or any claim of the Pre-Petition Secured Parties pursuant to the Pre-Petition Credit Agreement or the Pre-Petition Loan Documents.

(vi)     Cash Collateral.  The Pre-Petition Secured Parties have a security interest in Cash Collateral, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of Pre-Petition Collateral, to secure the Pre-Petition Liabilities and to the same extent and order of priority as that which was held by such party pre-petition.

(vii)   Deposit Accounts.  All deposit accounts of the Debtors maintained with the Pre-Petition Agent, and all funds therein as of the Petition Date, constitute Pre-Petition Collateral.  The funds on deposit in such accounts constitute Cash Collateral for all purposes hereof.

(viii)  No Priming of DIP Facility.  In entering into the DIP Credit Agreement, and as consideration therefor, each Debtor hereby agrees that until such time as all Post-Petition Obligations have been indefeasibly paid in full in cash and the DIP Credit Agreement is terminated in accordance with the terms thereof, such Debtor shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Secured Parties under this Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* lien or claim pursuant to Section 364(d) of the Bankruptcy Code or otherwise.

E.      Findings Regarding the Post-Petition Financing.

(i)     Need for Post-Petition Financing.  An immediate need exists for the Debtors to obtain funds from the DIP Facility in order to continue their operations in order to preserve and maximize the value of their estates.  The ability of the Debtors to finance their operations, to preserve and maintain the value of their assets, and maximize a return for all creditors and stakeholders requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates, their creditors, and their equity holders.

(ii)    No Credit Available on More Favorable Terms.  The Debtors have been unable to obtain (A) unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense; (B) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code; (C) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien; or (D) credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien, in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Interim Order.  The Debtors

are also unable to obtain secured credit, allowable only under Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Interim Order. The Debtors are unable to obtain credit for borrowed money without granting to the DIP Secured Parties the DIP Protections (as defined below).

(iii) <u>Prior Liens</u>. Nothing herein shall constitute a finding or ruling by this Court that any Pre-Petition Liens or Permitted Prior Encumbrances are valid, senior, perfected or unavoidable. Moreover, nothing shall prejudice (A) the rights of any party in interest including, but not limited to, the Debtors, the DIP Secured Parties and any committee appointed pursuant to Section 1102 of the Bankruptcy Code to challenge the validity, priority, perfection and extent of any such Pre-Petition Lien, Permitted Prior Encumbrance or security interest, except as stipulated by the Debtors in paragraph D above, or (B) the rights of any committee appointed pursuant to Section 1102 of the Bankruptcy Code to challenge the validity, priority, perfection and extent of the Pre-Petition Liens as set forth in this Interim Order.

F. <u>Section 506(c) Waiver</u>. As a further condition of the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Credit Agreement, upon entry of the Final Order, except to the extent of the provisions of Paragraph 8 of this Interim Order, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Cases or any Successor Cases (as defined below)) shall be deemed to have waived any rights or benefits of Section 506(c) of the Bankruptcy Code.

G. <u>Use of Proceeds of the DIP Facility</u>. Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Credit Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Credit Agreement,

and in accordance with the Budget and Cash Flow Forecasts (as defined therein and below and subject to the variances described therein and in Section 3(a) of this Interim Order), solely for (a) working capital and general corporate purposes to the extent set forth in the Budget and Cash Flow Forecasts, (b) payment of costs of administration of the Cases, to the extent set forth in the Budget and Cash Flow Forecasts, (c) payment of draws made under Letters of Credit pursuant to the terms of the DIP Credit Agreement, (d) payment of reasonable professional fees of the DIP Agent and the Pre-Petition Agent related to the Post-Petition Obligations and the Pre-Petition Liabilities (as defined below), (e) the payment of interest, fees and expenses owing to the DIP Secured Parties under the DIP Loan Documents, (f) payment of allowed fees and expenses of Case Professionals (as defined below), subject to the provisions of Paragraph 8 of this Interim Order, and (g) payment of Hedging Liability outstanding under, and as defined in, the Pre-Petition Loan Documents and Funds Transfer and Deposit Liability (whether outstanding under, and as defined in, the Pre-Petition Loan Documents as a Pre-Petition Liability or incurred on or after the Petition Date and defined in the DIP Loan Documents as part of the Post-Petition Obligations) as and when due as adequate protection to the Pre-Petition Secured Parties, as set forth in the Budget and Cash Flow Forecasts.

H.     Application of Proceeds of Collateral.   All proceeds of the sale or other disposition of the Collateral (as defined below) shall be applied first, to reduce the Post-Petition Obligations (and a corresponding reduction in the DIP Revolving Commitment, unless the sale or disposition of such Collateral is specifically provided for in the Budget and Cash Flow Forecasts as an assumed source of cash) until paid in full (except to the extent such payment or commitment reduction is waived in writing by the DIP Secured Parties), second, to permanently reduce the Pre-Petition Liabilities, each in accordance with and subject to the terms and

conditions of the DIP Credit Agreement, to the extent applicable, and this Interim Order, subject to the Carve-Out.

I.    Adequate Protection for Pre-Petition Secured Parties.  As a result of the grant of the DIP Liens, the subordination to the Carve-Out, the use of Cash Collateral authorized herein, and any decrease in the value of their respective interest in the Pre-Petition Collateral (including Cash Collateral) resulting from the automatic stay or the Debtors' use, sale, lease, depreciation or disposition of the Pre-Petition Collateral (including Cash Collateral) during the Cases, the Pre-Petition Secured Parties are entitled to receive adequate protection pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code.  As adequate protection, the Pre-Petition Agent (or the DIP Agent, as collateral agent therefore, in each case for the benefit of Pre-Petition Secured Parties) will receive: (1) Adequate Protection Payments (as defined below), (2) the Pre-Petition Replacement Liens, and (3) the Pre-Petition Superpriority Claim.

J.    Section 552.  In light of their agreement to subordinate their liens and superpriority claims to (i) the Carve-Out in the case of the DIP Secured Parties, and (ii) the Carve-Out and the DIP Liens in the case of the Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Secured Parties are each entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

K.    Extension of Financing.  The DIP Secured Parties have indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and subject to (i) the entry of this Interim Order and the Final Order, and (ii) findings by this Court that such financing is essential to the Debtors' estates, that the DIP Secured Parties are good faith financiers, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens, and other protections granted pursuant to this Interim Order (and the Final Order) and the

DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or the Final Order or any other order, as provided in Section 364(e) of the Bankruptcy Code.

L.     <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>.  The terms and conditions of the DIP Facility and the DIP Credit Agreement, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Credit Agreement was negotiated in good faith and at arms' length among the Debtors and DIP Secured Parties.  Credit to be extended under the DIP Facility and the use of Cash Collateral will be so extended and used in good faith, and for valid business purposes and uses, the consequence of which is that the DIP Secured Parties are entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

M.     <u>Relief Essential; Best Interest</u>.  The relief requested in the DIP Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtors' business, in order avoid immediate and irreparable harm to the Debtors and their estates and to preserve and maximize the Debtors' assets and personal property.  It is in the best interest of the Debtors' estate to be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement.

N.     <u>Entry of Interim Order</u>.  For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

NOW, THEREFORE, on the DIP Motion of the Debtors and the record before the Court with respect to the DIP Motion, and with the consent of the Debtors, the Pre-Petition Secured

Parties and the DIP Secured Parties to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

IT IS ORDERED that:

1. **MOTION GRANTED**. The DIP Motion is granted in its entirety in accordance with the terms and conditions of this Interim Order and the DIP Credit Agreement.

2. **DIP Credit Agreement**.

(a) <u>Approval of Entry into DIP Credit Agreement</u>. The Debtors are hereby expressly and immediately authorized and empowered to execute and deliver the DIP Credit Agreement and to incur and perform the Post-Petition Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Credit Agreement, and to execute and deliver all instruments, certificates, agreements, and documents which may be reasonably required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Credit Agreement; in connection therewith, the Debtors are expressly and immediately authorized and empowered to incur any such Post-Petition Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Credit Agreement. The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses and other amounts described in the DIP Credit Agreement and all other documents comprising the DIP Facility as such become due, including, without limitation, closing fees, DIP Agent fees, administrative fees, commitment fees, letter of credit fees and reasonable attorneys', financial advisors' and accountants' fees and disbursements as provided for in the DIP Credit Agreement, which amounts shall not otherwise be subject to approval of this Court; <u>provided,</u>

<u>however</u>, that copies of any such invoices, redacted as necessary to preserve the attorney-client privilege, shall be provided to the United States Trustee, counsel to the Debtors and counsel to the Creditors' Committee or other statutorily appointed committee and shall be subject to a ten (10) day review and objection period for such parties. Upon execution and delivery, the DIP Credit Agreement shall represent valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with its terms.

(b)     <u>Authorization to Borrow</u>.  In order to enable the Debtors to continue to operate their businesses during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Credit Agreement, documents comprising the DIP Facility, and the Budget and Cash Flow Forecasts (as defined below), the Debtors are hereby authorized under the DIP Facility to borrow or otherwise request extensions of credit (on a revolving basis pursuant to the DIP Revolving Commitment) up to $7,500,000 for the periods and in the amounts set forth in the DIP Credit Agreement, commencing on the date on which this Interim Order has been entered by this Court and continuing until the Termination Date (as defined in the DIP Credit Agreement), unless otherwise modified or amended by the DIP Secured Parties and approved by the Bankruptcy Court, provided that the maximum amount of borrowing to be permitted under this Interim Order shall not be more than $4,750,000.

(c)     <u>Use of DIP Proceeds</u>.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Credit Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Credit Agreement, and in accordance with the Budget and Cash Flow Forecasts (as defined the DIP Credit Agreement and below and subject to the variances as described therein and in

Section 3(a) of this Interim Order), solely for (a) working capital and general corporate purposes to the extent set forth in the Budget and Cash Flow Forecasts, (b) payment of costs of administration of the Cases, to the extent set forth in the Budget and Cash Flow Forecasts, (c) payment of draws made under Letters of Credit pursuant to the terms of the DIP Credit Agreement, (d) payment of reasonable professional fees of the DIP Agent and the Pre-Petition Agent related to the Post-Petition Obligations and the Pre-Petition Liabilities, (e) the payment of interest, fees and expenses owing to the DIP Secured Parties under the DIP Loan Documents, (f) payment of allowed fees and expenses of Case Professionals (as defined below), subject to the provisions of Paragraph 8 of this Interim Order, and (g) payment of Hedging Liability outstanding under, and as defined in, the Pre-Petition Loan Documents and Funds Transfer and Deposit Liability (whether outstanding under, and as defined in, the Pre-Petition Loan Documents as a Pre-Petition Liability or incurred on or after the Petition Date and defined in the DIP Loan Documents as part of the Post-Petition Obligations), as and when due, as adequate protection to the Pre-Petition Secured Parties, as set forth in the Budget and Cash Flow Forecasts.

(d)     Application of Proceeds of Collateral.  All proceeds of the sale or other disposition of the Collateral (as defined below) shall be applied first, to reduce the Post-Petition Obligations (and a corresponding reduction in the DIP Revolving Commitment, unless the sale or disposition of such Collateral is specifically provided for in the Budget and Cash Flow Forecasts as an assumed source of cash) until paid in full (except to the extent such payment or commitment reduction is waived in writing by the DIP secured Parties), and second, to permanently reduce the Pre-Petition Liabilities, each in

-17-

accordance with and subject to the terms and conditions of the DIP Credit Agreement, to the extent applicable, and this Interim Order, subject to the Carve-Out.

(e) <u>Conditions Precedent</u>. The DIP Secured Parties shall have no obligation to make any loan or advance or issue any letter of credit under the DIP Credit Agreement during the Interim Period unless the conditions precedent to make such loan or advance or issuance of a letter of credit under the DIP Credit Agreement have been satisfied in full or waived in accordance with the DIP Credit Agreement (and, in the case of letters of credit, the DIP Secured Parties have consented to the issuance thereof).

(f) <u>Post-Petition Liens</u>. Effective immediately upon the entry of this Interim Order, the DIP Agent (as collateral agent for the benefit of the DIP Secured Parties) is now and hereby granted pursuant to Sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming, first priority, continuing, valid, binding, enforceable, non-avoidable and automatically perfected post-petition security interests and liens (collectively, the "**DIP Liens**"), senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates except as otherwise provided in this Interim Order and the Final Order, upon and to all presently owned and hereafter acquired assets and real and personal property of the Debtors, including, without limitation, the following: all right, title and interest of each Debtor in and to any and all property, assets and things of value of every kind or type, tangible, intangible, real, personal and fixed, whether now owned or hereafter acquired and wherever located, including, without limitation, real property (including without limitation all leasehold interests, mineral leases, and mineral and water rights), the Cash Collateral Account (as defined in the DIP Credit Agreement) and all other deposit accounts, accounts, chattel paper (including

-18-

electronic chattel paper), instruments, documents (including electronic documents of title), all of each Debtor's rights and claims relating to all deposits and reserves held by utilities and trade creditors, inventory, farm products, rights against contract growers, equipment, rolling stock (including titled and non-titled vehicles), general intangibles (including, without limitation, payment intangibles, intellectual property, interests in partnerships and joint ventures and tax refunds), letter of credit rights, supporting obligations, commercial tort claims, investment property, and, effective only upon entry of a Final Order, all Bankruptcy Recoveries (as defined below), all pursuant to Section 364(c) and (d) of the Bankruptcy Code and, to the extent not otherwise included, (a) all proceeds of each of the foregoing, (b) all accessions to, substitutions and replacements (including any Property repaired, rebuilt or replaced with casualty insurance proceeds and condemnation awards) for, and insurance and condemnation proceeds, rents, profits and products of each of the foregoing, (c) the Pre-Petition Collateral, and (d) all Property of Debtor and each Guarantor held by the DIP Agent or any DIP Lender, including without limitation, the funds from time to time on deposit in the Collection Accounts referred to in the DIP Credit Agreement, any funds held in escrow by the DIP Agent pursuant to the DIP Credit Agreement, and all other property of every description, now or hereafter in the possession or custody of or in transit to the DIP Agent or any DIP Lender for any purpose, including safekeeping, collection or pledge, for the account of any Debtor or as to which any Debtor may have any right or power (collectively, the "**DIP Collateral**" and, together with the Pre-Petition Collateral, the "**Collateral**"). As used herein, "**Bankruptcy Recoveries**" shall mean any claims or causes of action that the Debtors may be entitled to assert by reason of any avoidance or

other power vested in or on behalf of the Debtors or their estates under Chapter 5 of the Bankruptcy Code. Without limiting the foregoing, the DIP Collateral includes all deposit accounts of the Debtors maintained with the Pre-Petition Agent and the DIP Agent and all funds therein on and after the Petition Date, and the DIP Agent (as collateral agent for the benefit of the DIP Secured Parties) is hereby granted, pursuant to Section 364(d) of the Bankruptcy Code, priming, first priority, continuing, valid, binding, enforceable, non-avoidable and automatically perfected post-petition security interests and liens, senior and superior in priority to all other Liens on such deposit accounts. The funds on deposit in such accounts may be released to the Borrowers or applied to the Post-Petition Obligations in accordance with the terms of this Interim Order and the DIP Credit Agreement.

(g)     The DIP Liens created and granted to the DIP Agent, as provided herein, (i) are created pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code; and (ii) are first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or lien or claim to the DIP Collateral, subject only to the Carve-Out and Permitted Prior Encumbrances. The DIP Liens shall secure all Post-Petition Obligations and shall not be made subject to or *pari passu* with any lien or security interest by any Court order heretofore or hereafter entered in the Cases unless and until all Post-Petition Obligations are satisfied in full in cash and the DIP Credit Agreement terminated; and shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of these Cases to cases under Chapter 7 of the Bankruptcy Code or in any other proceedings related to the foregoing (any "**Successor Case**"), and/or upon the dismissal of the Cases. The DIP Liens shall not be subject to

Sections 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of Section 552 of the Bankruptcy Code, or if approved in the Final Order, Section 506(c) of the Bankruptcy Code.

(h)     Enforceable Obligations.  The DIP Credit Agreement shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors, in accordance with the terms and conditions of the DIP Credit Agreement.

(i)     Protection of DIP Secured Parties and Other Rights.  From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Credit Agreement and this Interim Order and in compliance with the Budget and Cash Flow Forecasts (subject to the variances as described therein and in Section 3(a) of this Interim Order).

(j)     Superpriority Administrative Claim Status.  All Post-Petition Obligations shall be an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**", and, together with the DIP Liens, the "**DIP Protections**") with priority under Sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code, and otherwise over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of Final Order), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, that such claim shall

not extend to Bankruptcy Recoveries except as provided in the Final Order. Other than the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in this proceeding, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the Post-Petition Obligations, or with any other claims of the DIP Secured Parties arising hereunder.

3. **Authorization to Use Cash Collateral and Proceeds of DIP Credit Agreement**.

(a) Pursuant to the terms and conditions of this Interim Order, the DIP Facility and the DIP Credit Agreement, and in accordance with the Budget and Cash Flow Forecasts provided by the Debtors (as the same may be modified, supplemented or updated from time to time consistent with the terms of the DIP Credit Agreement, the "**Budget**" and "**Cash Flow Forecasts**"), the Debtors are authorized to use Cash Collateral and to use the advances under the DIP Credit Agreement during the period commencing immediately after the entry of the Interim Order and terminating upon the earlier to occur of: (i) five (5) days after written notice being provided by the DIP Agent to the Debtors that an Event of Default (as defined in the DIP Credit Agreement) has occurred, or (ii) the Termination Date (as defined in the Credit Agreement). If such payments are approved by the Court, upon request of the Debtors and in accordance with the DIP Credit Agreement, the Budget and Cash Flow Forecasts. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or other proceeds resulting therefrom, except as permitted in the DIP Facility and

the DIP Credit Agreement and in accordance with the Budget and Cash Flow Forecasts. Except as may be approved in writing by the DIP Required Lenders (as defined in the DIP Credit Agreement), in no event shall the Debtors transfer or use any of the Cash Collateral or use the advances under the DIP Credit Agreement such that the total aggregate disbursements by line item from the Petition Date shall have a negative variance from budgeted amounts in the Cash Flow Forecasts then in effect by more than 20% and the total aggregate disbursements from the Petition Date shall not have a negative variance from the budgeted amounts set forth in the Cash Flow Forecast then in effect by more than 10%, unless approved by the Required DIP Lenders (as defined in the DIP Credit Agreement). Notwithstanding the foregoing, the payment of budgeted fees and expenses for Case Professionals shall not be paid weekly, but rather shall accrue and be paid in accordance with the Order Approving the Motion for Establishment of Interim Fee Procedures (upon its entry by the Court) or as otherwise provided under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and Delaware local rules, or as otherwise permitted by the Court.

(b)     No Collateral, or the proceeds thereof, or advances made under the DIP Credit Agreement may be used by the Debtors, the Creditors' Committee, or any other person or entity to object to or contest in any manner, or raise any defenses to the validity, extent, perfection, priority or enforceability of the Pre-Petition Liabilities, the Pre-Petition Liens or any other liens or security interests with respect thereto or any other rights or interests of the Pre-Petition Secured Parties, or to assert any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against

the Pre-Petition Secured Parties, or for any other purpose prohibited by the terms of the DIP Credit Agreement.

4.  **Adequate Protection for Pre-Petition Liabilities**.  Subject to the rights afforded the Creditors' Committee and other parties under paragraph 7 of this Interim Order, as adequate protection for the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, subordination to the Carve-Out, the Debtors' use of Cash Collateral and other decline in value arising out of the automatic stay or the Debtors' use, sale, lease, depreciation, or disposition of the Pre-Petition Collateral (including Cash Collateral) (the "**Diminution in Value**"), the Pre-Petition Secured Parties shall receive adequate protection as follows:

(a)  <u>Pre-Petition Replacement Liens</u>.  Solely to the extent of the Diminution in Value of the interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Agent (or the DIP agent, as collateral agent therefor, in each case for the benefit of the Pre-Petition Secured Parties) shall have, subject to the terms and conditions set forth below, pursuant to Sections 361, 363(e) and 364 of the Bankruptcy Code, additional and replacement security interests and liens in the Collateral (the "**Pre-Petition Replacement Liens**"), which shall be junior only to the DIP Liens, the Carve-Out, Permitted Prior Encumbrances, and other liens consented to in writing by the Required Pre-Petition Lenders (for purposes hereof, "Required Pre-Petition Lenders" means as of the date of determination thereof, the majority in number of the Pre-Petition Lenders collectively holding more than 62% of the sum of the total outstanding Revolving Loans and Term Loans constituting Pre-Petition Liabilities under the Pre-Petition Credit Agreement).

(b)    <u>Pre-Petition Superpriority Claim</u>.  Solely to the extent of the Diminution in Value of the interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have an allowed superpriority administrative expense claim (the "**Pre-Petition Superpriority Claim**") which shall have priority (except with respect to (a) the DIP Liens, (b) the DIP Superpriority Claim, and (c) the Carve-Out), in any Cases under Sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non consensual lien, levy or attachment; <u>provided</u>, <u>however</u>, that such claim shall not extend to Bankruptcy Recoveries except as provided in the Final Order.  Other than the DIP Liens, the DIP Superpriority Claim, and the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in this proceeding, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the Pre-Petition Superpriority Claim.

(c)    <u>Adequate Protection Payments/Accrual of Interest Due upon Termination Date</u>. The Pre-Petition Secured Parties shall receive adequate protection in the form of (i) payment of Hedging Liability and Funds Transfer and Deposit Account Liability, as and when due, (ii) payment of costs, expenses, indemnities and other amounts with

respect to the Pre-Petition Liabilities hereafter arising in accordance with the Pre-Petition Credit Agreement and this Interim Order (collectively, the "**Adequate Protection Payments**"), and (iii) accrual of interest at the default rate set forth in the Pre-Petition Credit Agreement which shall become due and payable on the Termination Date with respect to the Pre-Petition Liabilities.

5.     **Section 507(b) Reservation**. Nothing herein shall impair or modify the Pre-Petition Secured Parties' rights under Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Pre-Petition Secured Parties hereunder is insufficient to compensate for the Diminution in Value of the interest of such Pre-Petition Secured Parties in the applicable Pre-Petition Collateral during the Cases or any Successor Cases, <u>provided, however,</u> that any claim granted in the Cases to the Pre-Petition Secured Parties pursuant to Section 507(b) of the Bankruptcy Code shall be junior in right of payment to all Post-Petition Obligations, and subject to the Carve-Out. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Pre-Petition Agent or other Pre-Petition Secured Parties that the adequate protection granted herein does in fact adequately protect the Pre-Petition Secured Parties against any Diminution in Value of their respective interests in the Pre-Petition Collateral (including Cash Collateral).

6.     **Post-Petition Lien Perfection**. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Pre-Petition Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to

validate or perfect the DIP Liens and the Pre-Petition Replacement Liens or to entitle the DIP Liens and the Pre-Petition Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, the DIP Agent and the Pre-Petition Agent (collectively, the "**Agents**") may, each in their sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases. The Debtors shall execute and deliver to the Agents all such security agreements, financing statements, mortgages, notices and other documents as the Agents may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Pre-Petition Replacement Liens granted pursuant hereto. The DIP Agent and the Pre-Petition Agent, in their discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. The DIP Agent shall, in addition to the rights granted to the DIP Agent under the DIP Credit Agreement, be deemed to be the successor in interest to the Pre-Petition Secured Parties with respect to all third party notifications in connection with the Pre-Petition Credit Agreement, all Blocked Account Agreements (as defined in the Pre-Petition Credit Agreement) and all other agreements with third parties (including any agreement with a landlord, warehouseman, customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Pre-Petition Collateral, including without limitation, each collateral

access agreement duly executed and delivered by any landlord of the Debtors and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements <u>provided</u> that the Pre-Petition Agent shall continue to have all rights pursuant to each of the foregoing.

7. **<u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>**. Nothing in this Interim Order or the DIP Credit Agreement shall prejudice whatever rights any Creditors' Committee or any other party in interest with requisite standing (other than the Debtors), may have (a) to file an adversary proceeding or contested matter or otherwise to object to or challenge the findings herein, regarding (i) the validity, extent, perfection, enforceability or priority of the mortgage, security interests and liens of the Pre-Petition Secured Parties in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status, enforceability or amount of the Pre-Petition Liabilities; or (b) to bring suit against any of the Pre-Petition Secured Parties in connection with or related to the Pre-Petition Liabilities, or the actions or inactions of any of the Pre-Petition Secured Parties arising out of or related to the Pre-Petition Liabilities; <u>provided, however</u>, that, unless any Creditors' Committee or any other party in interest with standing (other than the Debtors) commences a contested matter or adversary proceeding raising such filing or other objection or challenge, including without limitation any claim against the Pre-Petition Secured Parties in the nature of a setoff, counterclaim or defense to the Pre-Petition Liabilities (including but not limited to, those under Sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Pre-Petition Secured Parties), by the later of (a) 60 days following the appointment of the first Creditors' Committee, or (b) if no Creditors' Committee is appointed, 75 days following entry of this Interim Order (collectively, (a) and (b) shall be referred to as the "**Challenge Period**", and the

date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period shall be referred to as the "**Challenge Period Termination Date**"), upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any Creditors' Committee, any Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Cases, receiver, administrator, trustee, examiner with expanded powers, responsible officer, other estate representative and any other party in interest) shall be deemed to be forever waived and barred, and (x) the Pre-Petition Liabilities shall be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim within the meaning of Section 506 of the Bankruptcy Code for all purposes in connection with these Cases and any Successor Cases and the Debtors' Stipulations shall be binding on all creditors, interest holders and parties in interest (including, any Creditors' Committee, any creditor, or Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Cases, receiver, administrator, trustee, examiner with expanded powers, responsible officer, and other estate representative), the Pre-Petition Agent's security interests and Liens held for the benefit of the Pre-Petition Secured Parties' upon the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected security interests and Liens, not subject to recharacterization, subordination or otherwise avoidable, and (z) the payment of the Pre-Petition Liabilities in accordance with this Interim Order (whether prior or subsequent to the Petition Date) or in any Final Order shall be deemed final and indefeasible, not subject to subordination or disgorgement and otherwise unavoidable. To the extent any such objection or challenge is filed and is not successful, the Pre-Petition Secured Parties shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or challenge as part of the Pre-

Petition Liabilities.  For the avoidance of doubt, any trustee appointed or elected in these cases shall, until the Challenge Period Termination Date and thereafter for the duration of any adversary proceeding or contested matter timely commenced pursuant to this paragraph 7 (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party "other than the Debtors" and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Order.

8.    **Carve-Out**.

(a)    Subject to the terms and conditions contained in this Paragraph 8, the DIP Liens, DIP Superpriority Claims, the Pre-Petition Replacement Liens and the Pre-Petition Superpriority Claims are subordinate to (i) unpaid fees payable to the U.S. Trustee and the Clerk of the Bankruptcy Court pursuant to Section 1930 of Title 28 of the U.S. Code; and in an aggregate amount not to exceed $1,500,000 (inclusive of the fees and expenses of FTI Consulting as an employee of the Debtors) as set forth in the Budget and Cash Flow Forecasts, (ii) allowed and paid professional fees and disbursements ("**Paid Professional Fees**", and together with the Reported Professional Fees (as defined below), collectively, the "**Professional Fees**") incurred by the Debtors and any Creditors' Committee for any professional retained by a final order of the Court (which order has not been vacated, stayed or appealed) by the Debtors (other than ordinary course professionals) and the Creditors' Committee under Sections 327 or 1103(a) of the Bankruptcy Code) (each, a "**Case Professional**") and which are consistent with the fees allocated to such Case Professional in the Budget; (iii) the Reported Professional Fees; and (iv) an aggregate amount, not to exceed $100,000, on account of fees and disbursements incurred by Case

Professionals following the Default Point (as defined below) (the "**Post-Default Carve Out Amount**") (the sum of the amounts described in clauses (i), (ii), (iii) and (iv) of this Section 8 are hereinafter referred to as the "**Carve-Out**"). Any unapplied pre-petition retainers of Case Professionals may be held and applied by such Case Professional against its allowed fees and expenses in its final application for fees. As used herein, the term "**Reported Professional Fees**" shall mean the amount of professional fees and disbursements of the Debtors and any Creditors' Committee which have been incurred, accrued or invoiced (but remain unpaid) prior to the Default Point that are ultimately allowed. As used herein, the term "**Default Point**" shall mean the date on which the DIP Agent provides notice that an Event of Default has occurred and is continuing.

(b)     The Carve-Out shall exclude any fees and expenses (x) incurred in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (A) invalidating, setting aside, avoiding, or subordinating, in whole or in part (i) the Post-Petition Obligations, (ii) the Pre-Petition Liabilities, (iii) the Pre-Petition Liens in the Pre-Petition Collateral, (iv) the DIP Agent's or DIP Secured Parties' Liens in the DIP Collateral, or (v) the Pre-Petition Replacement Liens in the DIP Collateral; or (B) preventing, hindering or delaying, whether directly or indirectly, the DIP Agent's, DIP Secured Parties' or Pre-Petition Secured Parties' assertions or enforcement of their Liens, security interests or realization upon any DIP Collateral, Pre-Petition Collateral or the Pre-Petition Replacement Liens, and no Cash Collateral or proceeds from the DIP Facility may be used to accomplish any of the foregoing, provided, however, that such exclusion shall not apply to any

investigation conducted by attorneys and financial advisors employed by the Creditors' Committee pursuant to Sections 327 and 1103 of the Bankruptcy Code prior to bringing any action relating to the foregoing to the extent such fees and expenses do not exceed $25,000; (y) incurred in selling or otherwise disposing of any Collateral, or incurring any indebtedness not permitted under the DIP Credit Agreement, without the DIP Agent's express written consent; or (z) incurred after the conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code.

(c)    Except as otherwise provided in this paragraph, nothing contained in this Interim Order shall be deemed a consent by the Pre-Petition Secured Parties or DIP Secured Parties to any charge, lien, assessment or claim against the DIP Collateral, the Pre-Petition Collateral or the Pre-Petition Replacement Liens under Section 506(c) of the Bankruptcy Code or otherwise. Except to the extent of the provisions of Paragraph 8 of this Interim Order, nothing herein shall be construed to obligate the Pre-Petition Secured Parties or DIP Secured Parties, in any way, to pay the Professional Fees, or to assure that the Debtors have sufficient funds on hand to pay any Professional Fees. So long as no Event of Default has occurred and is continuing, the Debtors shall be permitted to pay compensation and reimbursement of expenses of any Case Professional allowed and payable under Sections 330 and 331 of the Bankruptcy Code and in accordance with the Budget and Cash Flow Forecasts (subject to the variance described in Section 3(a) of this Interim Order), as the same may be due and payable and such payments shall reduce the Carve-Out. On and after the Default Point, the Debtors shall be permitted to pay compensation and reimbursement of expenses of any Case Professional only to the extent

that (i) such compensation and expenses represent payment of Reported Professional Fees, or (ii) such compensation and expenses are part of the Post-Default Carve Out Amount.

9. **Payment of Compensation**. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any Case Professional, or of any person, or shall be deemed to affect the right of the Agents to object to the allowance and payment of such fees and expenses or the permission of the Agents to allow the Debtors to pay the amount of any allowed fees on expenses of any Case Professional that exceed the amounts set forth in the Budget and Cash Flow Forecasts and any variance of the budgeted amounts approved in this Interim Order

10. **Section 506(c) Claims**. Subject to the entry of a Final Order, except to the extent of the provisions of Paragraph 8 of this Interim Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Secured Parties, the Pre-Petition Secured Parties, their respective claims, the DIP Collateral or the Pre-Petition Collateral, pursuant to Sections 105, and 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Agents. Nothing contained in this Interim Order shall be deemed a consent by the Pre-Petition Secured Parties or the DIP Secured Parties to any charge, lien, assessment, claim or other Lien against the DIP Collateral, the Pre-Petition Collateral or the Pre-Petition Replacement Liens under Section 506(c) of the Bankruptcy Code or otherwise, except to the extent of the provisions of Paragraph 8 of this Interim Order.

11. **Collateral Rights**. Upon the occurrence of all of the Post-Petition Obligations having been paid in full in cash (or to be paid in full in cash upon entry of an order approving the indebtedness described below), all post-petition commitments to lend (including, without limitation, all DIP Revolving Credit Commitments (as defined in the DIP Credit Agreement))

having been irrevocably terminated, all Letters of Credit having been secured in full with cash collateral as required by the DIP Credit Agreement, and all indemnification obligations under the DIP Credit Agreement have been secured in full with cash collateral, and upon the further written consent of the Required Pre-Petition Lenders (as defined in paragraph 4(a) above), the Required Pre-Petition Lenders may seek, and an order may be entered herein or in any Successor Cases, which authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, lien, collateral interest or other Lien on all or any portion of the DIP Collateral or the Pre-Petition Collateral and/or entitled to priority administrative status which is equal or senior to that granted to the Pre-Petition Secured Parties or DIP Secured Parties herein; *provided, however,* that nothing herein shall constitute a consent, implied or otherwise, by the DIP Agent and DIP Secured Parties to any such credit or indebtedness similarly secured other than as expressly provided herein, or a waiver of any right by any Pre-Petition Lender available to it under the Bankruptcy Code to object to such credit or indebtedness similarly secured, or to any relief from stay by any person other than of the DIP Agent or other DIP Secured Parties on all or any portion of the Collateral, or the Debtors' return of goods constituting Collateral pursuant to Section 546(h) of the Bankruptcy Code.

12. **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of Paragraph 11, above, if at any time prior to the indefeasible payment in full in cash of all Post-Petition Obligations and the termination of the DIP Agent's and DIP Secured Parties' obligations to make loans and advances under the DIP Credit Agreement, including subsequent to the confirmation of any Chapter 11 plan or plans (the "**Plan**") with respect to any or all of the Debtors, their estates, any trustee, any examiner with expanded responsibilities, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Sections

364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Credit Agreement, then all of the cash proceeds and all Cash Collateral derived from such credit or debt shall immediately be turned over to the DIP Agent or the Pre-Petition Agent, as applicable, in reduction of Post-Petition Obligations and the Pre-Petition Liabilities, and shall be treated as proceeds of Collateral, in accordance with the terms of the DIP Credit Agreement and this Interim Order.

13. **Termination Date**. Immediately upon the Termination Date, all (i) Post-Petition Obligations shall be immediately due and payable, (ii) authority to use the proceeds of the DIP Credit Agreement and, except as provided in Section 17(a) hereof, to use Cash Collateral, shall cease, and (iii) accrued interest at the default rate on the Pre-Petition Liabilities shall be immediately due and payable to the Pre-Petition Agent (for the benefit of the Pre-Petition Secured Parties).

14. **Payment from Proceeds of Collateral**. All products and proceeds of the Collateral (including, for the avoidance of doubt, proceeds from receivables and sales in the ordinary course of business or from any sale permitted by the DIP Credit Agreement, insurance proceeds, and proceeds of all dispositions of Collateral, whether or not in the ordinary course) regardless of whether such Collateral came into existence prior to the Petition Date, shall be remitted to the DIP Agent for application in accordance with the terms of the DIP Credit Agreement and this Interim Order.

15. **Disposition of Collateral**. The Debtors shall not (a) sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral or Pre-Petition Collateral, without the prior written consent of the requisite DIP Secured Parties and Pre-Petition Secured Parties (and no such consent shall be implied, from any other action, inaction or acquiescence by

the DIP Secured Parties, the Pre-Petition Secured Parties, or an order of this Court), except for sales of the Debtors' assets in the ordinary course of business, or as otherwise provided for in the DIP Credit Agreement and this Interim Order and approved by the Court, or (b) assume, reject or assign any lease, except as otherwise provided for in the DIP Credit Agreement or consented to in writing by the DIP Agent.

16. **Events of Default**. The occurrence of any Event of Default (as defined in the DIP Credit Agreement) shall constitute an Event of Default under this Interim Order. Unless and until the Pre-Petition Liabilities and Post-Petition Obligations have been repaid in full in cash, all commitments to lend have irrevocably terminated, all Letters of Credit have been cash collateralized in accordance with the DIP Credit Agreement and all Pre-Petition Liabilities and Post-Petition Obligations that survive termination of the obligations have been cash collateralized to the reasonable satisfaction of the Pre-Petition Agent and DIP Agent, the protections afforded to Pre-Petition Secured Parties and the DIP Secured Parties pursuant to this Interim Order and under the DIP Credit Agreement, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting these Cases into Successor Cases, and the DIP Liens, the DIP Superpriority Claim, the Pre-Petition Replacement Liens, and the Pre-Petition Superpriority Claims shall continue in this proceeding and in any Successor Cases, and such DIP Liens, DIP Superpriority Claim, Pre-Petition Replacement Liens, and the Pre-Petition Superpriority Claims shall maintain their priority as provided by this Interim Order.

17. **Rights and Remedies upon Event of Default**.

(a) Any automatic stay otherwise applicable to the Pre-Petition Secured Parties and DIP Secured Parties is hereby modified so that after the occurrence of any Event of Default and at any time thereafter, upon five (5) business days prior written notice of such

occurrence, in each case given to each of the Debtors, counsel to the Debtors, counsel to the Creditors' Committee or any other statutorily appointed committee (if any), and the United States Trustee, the Pre-Petition Secured Parties and the DIP Secured Parties shall be entitled to exercise their rights and remedies in accordance with the Pre-Petition Loan Documents and the DIP Loan Documents, as applicable. Immediately following the giving of notice by the DIP Agent of the occurrence of an Event of Default: (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of Collateral to the DIP Agent as provided in the DIP Credit Agreement and this Interim Order; and (ii) the DIP Agent shall continue to apply such proceeds in accordance with the provisions of this Interim Order and the DIP Credit Agreement. Following the giving of written notice by the DIP Agent of the occurrence of an Event of Default, the Debtors shall be entitled to an emergency hearing before this Court for the purpose of contesting whether an Event of Default has occurred (such hearing, an "**Emergency Stay Hearing**"). If the Debtors do not contest the right of the Pre-Petition Secured Parties and DIP Secured Parties to exercise their remedies based upon whether an Event of Default has occurred within the time period specified above, or if the Debtors do timely contest the occurrence of an Event of Default and this Court, after notice and hearing, declines to stay the enforcement thereof, the automatic stay as to the Pre-Petition Secured Parties and DIP Secured Parties shall automatically terminate at the end of such notice period. After the applicable Emergency Stay Hearing, unless this Court shall have entered an order to the contrary: (i) the Debtors shall have no right to use any of such proceeds nor any other Cash Collateral other than towards the satisfaction of the Post-Petition Obligations, the Pre-Petition Liabilities, and the Carve-Out; and (ii) any obligation otherwise imposed on the DIP

Agent or the other DIP Secured Parties to provide any loan or advance to or otherwise extend credit to or for the account of the Debtors pursuant to the DIP Facility shall be suspended.

(b)     Subject to the provisions of paragraph 17(a), upon the occurrence of an Event of Default, and unless this Court shall have entered an order to the contrary, the DIP Secured Parties are authorized to exercise their remedies and proceed under or pursuant to the DIP Credit Agreement. All proceeds realized from any of the foregoing shall be turned over to the DIP Agent for application to the Carve-Out (provided that any application of such proceeds to the Carve-Out shall not reduce the Post-Petition Obligations or the Pre-Petition Liabilities), the Post-Petition Obligations, and the Pre-Petition Liabilities under, and in accordance with the provisions of, the DIP Credit Agreement, the Pre-Petition Credit Agreement, and this Interim Order.

(c)     The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Credit Agreement as necessary to (i) permit the Debtors to grant the Pre-Petition Replacement Liens and the DIP Liens, and to incur all liabilities and obligations to the Pre-Petition Secured Parties, the DIP Secured Parties under the DIP Credit Agreement, the DIP Facility and this Interim Order, and (ii) authorize the DIP Secured Parties and the Pre-Petition Secured Parties to retain and apply payments in accordance with the terms of the DIP Credit Agreement and this Interim Order.

(d)     Nothing included herein shall prejudice, impair, or otherwise affect the Pre-Petition Secured Parties' or DIP Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors', the DIP Agent's or DIP Secured Parties' rights, as

provided in the DIP Credit Agreement, to suspend or terminate the making of loans under the DIP Credit Agreement.

18. **Rights with Respect to Certain Pre-Petition Agreements**. The DIP Agent and the other DIP Secured Parties shall have all the rights and benefits with respect to each Blocked Account Agreement (as defined in the Pre-Petition Credit Agreement), each other agreement with a third party (including any agreement with a landlord, warehouseman, customs broker, freight forwarder, or credit card processor), and each other notification or agreement received or furnished in connection with the Pre-Petition Credit Agreement, and all depository banks, blocked account banks, landlords, warehousemen, customs brokers, freight forwarders, credit card processors and other third parties shall continue to comply for the benefit of the DIP Agent and the DIP Secured Parties, with the terms and conditions of each such agreement or notification, in each such case whether or not, and as if, an additional agreement or notification has been executed or furnished in connection with the DIP Credit Agreement.

19. **Proofs of Claim**. Each Debtor acknowledges and agrees that both the Pre-Petition Liabilities and the Post-Petition Obligations, and the related liens, rights priorities and protections granted to or in favor of the applicable Pre-Petition Secured Parties and DIP Secured Parties, respectively, as set forth herein and in the Pre-Petition Credit Agreement and the DIP Credit Agreement, as applicable, shall each constitute a proof of claim on behalf of the applicable Pre-Petition Secured Parties or DIP Secured Parties in the Cases. Neither the Pre-Petition Secured Parties nor the DIP Secured Parties will be required to file proofs of claim in the Cases or in any Successor Cases; however, each are hereby authorized and entitled to file (and amend and/or supplement) proofs of claim in these cases or any Successor Cases.

20. **Other Rights and Obligations**.

(a) Good Faith under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order. Based on the findings set forth in this Interim Order and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, the DIP Secured Parties are entitled to the protections provided in Section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the DIP Secured Parties hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Protections granted to the DIP Secured Parties shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim. Since the loans made and credit extended pursuant to the DIP Credit Agreement are made in reliance on this Interim Order, the obligations owed the DIP Secured Parties prior to the effective date of any stay, modification or vacation of this Interim Order shall not, as a result of any subsequent order in these cases, or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Secured Parties under this Interim Order and/or the DIP Credit Agreement.

(b)     Expenses.   As provided in the Pre-Petition Credit Agreement and DIP Credit Agreement, all reasonable costs and expenses of the DIP Secured Parties and Pre-Petition Agent in connection with the DIP Credit Agreement and the Pre-Petition Credit Agreement, including, without limitation, reasonable, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses will be paid by the Debtors, whether or not the transactions contemplated hereby are consummated.   Payment of such fees shall not be subject to allowance by the Court.   Under no circumstances shall professionals for the DIP Secured Parties or Pre-Petition Agent be required to comply with the United States Trustee fee guidelines; provided, however, that copies of any such invoices, redacted as necessary to preserve the attorney-client privilege, shall be provided to the United States Trustee, counsel to the Creditors' Committee and counsel to the Debtors and shall be subject to a ten (10) day review and objection period for such parties.

(c)     Binding Effect of Interim Order.   The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Secured Parties, the DIP Agent, the Pre-Petition Secured Parties, the Pre-Petition Agent, the Debtors and their successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in these cases, in any Successor Cases, or upon dismissal of any such Chapter 11 or Chapter 7 Cases.

(d)     No Waiver.   The failure of the Pre-Petition Secured Parties or the DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under the

-41-

DIP Credit Agreement, the DIP Facility, this Interim Order or the Pre-Petition Credit Agreement, as applicable, shall not constitute a waiver of any of the Pre-Petition Secured Parties' or the DIP Secured Parties' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Pre-Petition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Pre-Petition Secured Parties or the DIP Secured Parties to: (i) request conversion of these cases to Cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in these cases, or (ii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Plan or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Secured Parties or the Pre-Petition Secured Parties.

(e) <u>Reservation of Rights to Modify Availability Reserves or Borrowing Base</u>. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to the rights of the DIP Agent and the DIP Secured Parties to modify availability reserves or to otherwise modify the Borrowing Base as set forth in the DIP Credit Agreement.

(f) <u>Chief Operating Officer</u>. The Debtors will continuously maintain a Chief Operating Officer ("**COO**") selected by the Debtors and reasonably acceptable to the Required DIP Lenders to, among other things, assist the Debtors in the preparation of their cash flow forecast and business plan, assist the Debtors in liquidating slow moving inventory, assist the Debtors in their workforce reduction initiatives, and assist the Debtors in their sales initiative. In the event the COO ceases for any reason to act in that capacity, the Debtors shall engage a successor COO reasonably acceptable to the Required DIP

Lenders within five (5) business days. The Debtors shall take reasonable steps to cause the COO to be available for discussions with the DIP Agent and the DIP Secured Parties from time to time upon reasonable request by the DIP Agent or DIP Secured Parties.

(g)     Retention of Investment Banking Firm.   Within thirty (30) days of the Petition Date, the Debtors shall use their best efforts to have the Court enter an order authorizing the Debtors to retain an investment banking firm reasonably acceptable to the Required DIP Lenders, on terms and conditions reasonably acceptable to the Required DIP Lenders, to market substantially all of the Debtors' assets for sale as a going concern.

(h)     Sales Effort Reports/Binding LOI.   The Debtors and their advisors shall provide the DIP Agent and the DIP Secured Parties with bi-weekly telephonic reports of all sale efforts, expressions of interest and offers received. The Debtors shall keep the DIP Agent and the DIP Secured Parties informed on a current basis of the status of all written proposals for any sale received and provide the DIP Agent and the DIP Secured Parties with copies of all such proposals and other related communications received from third parties within two (2) business days after the Debtors' receipt thereof. Unless otherwise approved by the DIP Secured Parties, on or before March 31, 2011 Debtors shall have received one or more binding letters of intent from third parties for the purchase of substantially all of the Collateral or of either the Iseli or Weeks business units.

(i)     No Third Party Rights.   Except as specifically provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

(j)     No Marshaling.  Neither the DIP Secured Parties nor Pre-Petition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any of the Collateral.

(k)     Section 552(b).  In light of their agreement to subordinate their liens and superpriority claims to (i) the Carve-Out in the case of the DIP Secured Parties, and (ii) the Carve-Out and DIP Liens in the case of the Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Secured Parties shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Pre-Petition Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or the DIP Collateral.

(l)     Amendment.  The Debtors and the DIP Secured Parties may amend, modify, supplement, or waive any provision of the DIP Facility without further order of this Court, provided that such amendment or waiver, in the judgment of the Debtors and the DIP Secured Parties, is either nonprejudicial to the rights of third parties or is not material.  Except as otherwise provided herein, no material waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by the Debtors and the DIP Secured Parties (after having obtained the approval of the DIP Secured Parties in accordance with the terms of the DIP Credit Agreement) and approved by the Court, including the consent to any priming Liens (as defined in the DIP Credit Agreement) on the Collateral (as defined in the Credit Agreement) so long as the DIP Revolving Credit Commitments (as defined in the DIP Credit Agreement) are outstanding or any DIP Credit (as defined in the DIP Credit Agreement) is outstanding

thereunder (except for the Liens granted by the DIP Credit Agreement to the DIP Agent or as permitted by Section 8.8 of the DIP Credit Agreement or by the Bankruptcy Court in this Interim Order or in the Final Order).

(m) <u>Survival of Interim Order</u>. The terms of this Interim Order and any actions taken pursuant hereto, shall survive the entry of any order which may be entered: (a) confirming any Plan in these cases; (b) dismissing these cases; (c) converting these cases to any other Chapter under the Code; (d) withdrawing of the references of these cases from this Court; and (e) providing for abstention from handling or retaining of jurisdiction of these cases in the Court. The terms and provisions of this Interim Order as well as the DIP Protections granted pursuant to this Interim Order and the DIP Credit Agreement, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by this Interim Order until all the obligations of the Debtors to the DIP Secured Parties pursuant to the DIP Credit Agreement, and all obligations of the Debtors to the Pre-Petition Secured Parties under the Pre-Petition Credit Agreement, have been indefeasibly paid in full in cash and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms). The Post-Petition Obligations shall not be discharged by the entry of an order confirming a Plan, the Debtors having waived such discharge pursuant to Section 1141(d)(4) of the Bankruptcy Code. Except as agreed to in writing by the DIP Agent, the DIP Secured Parties and the Pre-Petition Secured Parties, the Debtors shall not propose or support any Plan that is not conditioned upon the indefeasible payment in full in cash of all of the Post-Petition Obligations and the Pre-

Petition Liabilities, on or prior to the earlier to occur of (i) the effective date of such Plan and (ii) the Termination Date.

(n) <u>Inconsistency</u>.  In the event of any inconsistency between the terms and conditions of the DIP Credit Agreement and of this Interim Order, the provisions of this Interim Order shall govern and control.

(o) <u>Enforceability</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(p) <u>Objections Overruled</u>.  All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

(q) <u>No Waivers or Modification of Interim Order</u>.  Each Debtor agrees that it shall not have any right to seek, and shall not seek, any modification or extension of this Interim Order without the prior written consent of the DIP Agent and DIP Secured Parties and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent and DIP Secured Parties.  Nothing in this Interim Order shall limit the DIP Secured Parties' and the Pre-Petition Secured Parties' rights to seek modification of this Order (with the consent of the Debtors if no Event of Default exists) or for cause if an Event of Default exists under the Post-Petition Credit Agreement.

(r) <u>Waiver of any Applicable Stay</u>.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

(s)    <u>Rights Against Non-Debtors Preserved</u>.  Nothing in this Interim Order shall in any way prejudice or compromise any rights that the Pre-Petition Secured Parties or the DIP Secured Parties may have against parties other than the Debtors.

21.    **Final Hearing**.  Each Debtor shall, within 2 days of entry of this Interim Order on the Court's docket, serve by U.S. mail copies of the notice of entry of this Interim Order, together with a copy of this Interim Order and proposed Final Order to (i) parties having been given notice of the emergency hearing, (ii) any other party which has filed a request for special notice with this Court and served such request upon the Debtors' counsel, (iii) counsel for any statutorily appointed committee, and (iv) the United States Trustee.  The notice of entry of this Interim Order shall state that any party in interest objecting to the DIP Facility or the terms of the Final Order shall file written objections with the United States Bankruptcy Court Clerk for the District of Delaware no later than October 26, 2010, (at 4:00 pm.) which objections shall be served so that same are received by no later than 4:00 p.m. (Eastern time) on such date by: (a) United States Trustee for Region 3, Office of the U.S. Trustee, 844 King Street, Suite 2313, Lockbox 35, Wilmington, DE 19801-3519; Attn: Mark Kenney, Esq.; (b) counsel for the Debtors, Bryan Cave LLP, Attention: Eric S. Prezant. Esq. and Cullen Kuhn, Esq., 161 North Clark Street, Suite 4300, Chicago, IL 60601-3315, and Morris, Nichols, Arsht & Tunnell LLP, Attention: Derek Abbott, Esq. and Andrew Remming, Esq. 1201 North Market Street, Wilmington DE 19899-1347; (c) counsel for the DIP Agent and the Pre-Petition Agent, Chapman and Cutler LLP Attention: David T.B. Audley, Esq. 111 West Monroe Street, Chicago, IL 60603-4080, and Klehr Harrison Harvey Branzburg LLP, Attention: Richard M. Beck, Esq. 919 Market Street, Suite 1000, Wilmington, DE 19801; (d) counsel to any committee.

(a)     The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

(b)     The Final Hearing to consider the Motion and Final Order shall be held on November 4, 2010 at 2:30pm before the Honorable Kevin J. Carey, United States Bankruptcy Judge with objections to be filed and served on or before 4:00 p.m. on Oct 26, 2010. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

SO ORDERED by the Court this 6th day of October, 2010.

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE