# **EXHIBIT B**

[Proposed Bid Procedures]

# BID PROCEDURES[1]

International Garden Products, Inc. and its affiliated debtors and debtors-in-possession (collectively the "Debtors")[2] have filed chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under Case No. 10-13207 (KJC). By order dated _____, 2011 (the "Bidding Procedures Order"), the Bankruptcy Court approved the process and procedures set forth below (the "Bid Procedures") to effectuate the sale of substantially all of the Debtors' assets. The Bid Procedures are designed to facilitate a full and fair bidding process to maximize the value of the Debtors' assets for the benefit of the Debtors' creditors and their bankruptcy estates.

The Bid Procedures and the Bidding Procedures Order contemplate that on _____, 2011, as further described below, the Bankruptcy Court shall conduct a hearing (the "Sale Hearing") at which the Debtors shall seek entry of an order (the "Sale Order") authorizing and approving the sale of the Acquired Assets[3] (the "Proposed Sale") to IGP Acquisition LLC (the "Stalking Horse Purchaser") or to the Successful Bidder (as defined below).

## I. Stalking Horse Asset Purchase Agreement

On _____, 2011, the Debtors entered into an asset purchase agreement (the "Agreement") with the Stalking Horse Purchaser, pursuant to which the Stalking Horse Purchaser has agreed to acquire the Acquired Assets. The assets to be purchased as part of the Sale do not include the Excluded Assets described in the Agreement. Pursuant to the Agreement, the Stalking Horse Purchaser has agreed to provide consideration for the Acquired Assets in an amount equal to the Purchase Price, as defined in Section 3.1 of the Agreement, which includes Cash Consideration in the amount of twenty-six million six hundred seventy thousand dollars ($26,670,000), subject to certain working capital adjustments. The sale contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"). The Agreement also contemplates that if the Bankruptcy Court approves, and the Debtors consummate, the sale of substantially all of the Acquired Assets to a person or entity other than the Stalking Horse Purchaser in connection with these Bidding Procedures, the Stalking Horse Purchaser will be entitled to receive a break-up fee in the amount of eight hundred thousand dollars ($800,000) (approximately 3% of the Cash Consideration) (the "Break-Up Fee").

---

[1] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Agreement (defined herein).

[2] The Debtors are the following entities: International Garden Products, Inc., Weeks Wholesale Rose Grower, California Nursery Supply, Iseli Nursery, Inc., and Old Skagit, Inc.

[3] "Acquired Assets" shall mean substantially all of the Debtors' assets, as more fully set forth in the Agreement.

## II. Competitive Bidding Process

### A. Participation Requirements

In order to participate in the competitive bidding process, each person or entity intending to bid on the Acquired Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtors and the Debtors' counsel the following items (collectively, the "Participation Requirements"):

(i) Confidentiality Agreement. An executed confidentiality agreement in form and substance reasonably acceptable to the Debtors (each a "Confidentiality Agreement"); and

(ii) Proof of Financial Ability to Perform. The most current audited and latest unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of the Proposed Sale, Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure evidencing the Potential Bidder's ability to close the Sale, the sufficiency of which shall be determined by the Debtors in their reasonable discretion.

Within two (2) business days after a Potential Bidder submits the documents intended to meet the Participation Requirements, the Debtors, upon consultation with their financial and legal advisors, shall determine whether the Potential Bidder has met the Participation Requirements and shall notify the Potential Bidder as to that determination. Only upon satisfaction of all Participation Requirements will the Potential Bidder be deemed a "Qualified Bidder" eligible to participate in the bidding for the Acquired Assets.

### B. Access to Due Diligence Materials

Upon satisfaction of the Participation Requirements and the designation of a Potential Bidder as a Qualified Bidder, the Debtors will afford each Qualified Bidder due diligence access to the Acquired Assets; provided, however, that the Debtors will have no obligation to provide due diligence access after the Bid Deadline (defined below). The Debtors have designated William Blair & Company, L.L.C. ("William Blair") as their representative to coordinate all reasonable requests for additional information and due diligence access for Qualified Bidders.

### C. Bid Deadline

The deadline for Qualified Bidders to submit bids for the Acquired Assets shall be _____, 2011, at _____ p.m. (prevailing Eastern Time) (the "Bid Deadline"). A bid received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal for the Acquired Assets (a "Bid") shall deliver written copies of its Bid so as to be received on or before the Bid Deadline by the following:

    (i)    the Debtors, c/o International Garden Products, Inc., 20340 SE Highway 212, Damascus, Oregon 97089, Attn: Jay Hulbert;

    (ii)    counsel to the Debtors, Bryan Cave LLP, 161 North Clark Street, Suite 4300, Chicago, Illinois 60601-3315, Attn: Eric Prezant, Esq., and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn. Derek Abbott, Esq.;

    (iii)    William Blair & Company, L.L.C., 222 West Adams Street, Chicago, Illinois 60606, Attn: Geoffrey A. Richards;

    (iv)    counsel to the Debtors' pre- and post-petition lenders, Chapman & Cutler LLP, 111 West Monroe, Chicago, Illinois 60603, Attn: David T.B. Audley, Esq., and Klehr, Harrison, Harvey, Branzburg, LLP, 919 Market Street, Suite 1000, Wilmington, Delaware 19801, Attn: Richard M. Beck, Esq.;

    (v)    counsel to the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"), LeClairRyan, One Riverfront Plaza, 1037 Raymond Boulevard, Sixteenth Floor, Newark, New Jersey 07102, Attn: Jason C. DiBattista, and Pepper Hamilton LLP, 1313 Market Street, Hercules Plaza, Suite 5100, Wilmington, Delaware 19899-1709, Attn: David M. Fournier, Esq.; and

    (vi)    counsel to the Stalking Horse Purchaser, Kavinoky Cook LLP, 726 Exchange Street, Suite 800, Buffalo, New York 14210, Attn: David A. LoTempio, Esq.

**D.**    **Determination of Qualified Bid Status**

To be eligible to participate in the bidding process for the Acquired Assets, each Qualified Bidder must deliver a written Bid to the Debtors and the other required parties by the Bid Deadline that complies with all of the following conditions:

    (i)    Modified Agreement. The Bid shall include an execution copy of the proposed asset purchase agreement signed by an authorized representative of the Qualified Bidder (the "Modified Agreement") and a black-lined copy of the Modified Agreement compared against the Agreement to show all changes requested by the Qualified Bidder, including, without limitation, those related to the Purchase Price, Cash Consideration, any working capital adjustments, the Potential UCC Payment, and a list of any of the Debtors' employees not offered employment; provided, however,

3

that the terms of the Modified Agreement must be in all respects the substantially the same or better than the terms of the Agreement.

(ii) <u>Acquired Assets</u>. Each Bid shall be for all or a portion of the Acquired Assets. For Bids on less than all of the Acquired Assets, such Bids may only become Qualified Bids if, when considered in combination with other Bids (i) such combination of Bids collectively offers an aggregate consideration equal to the Minimum Initial Bid (defined below), and (ii) each Bid comprising such combination otherwise meets the requirements of a Qualified Bid (such combination of Bids, a "<u>Combination Bid</u>").

(iii) <u>Assumption of Agreements</u>. The Modified Agreement must identify which of the Debtors' executory contracts and unexpired leases (the "<u>Assigned Agreements</u>") such Qualified Bidder seeks to assume, acknowledge the Cure Amounts, and agree to pay the Cure Amounts at Closing.

(iv) <u>Contingencies</u>. A Bid may not be conditioned on financing, inspection, obtaining internal approval or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Agreement.

(v) <u>Authorization to Bid</u>. A Bid shall include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Agreement.

(vi) <u>Good Faith Deposit</u>. Each Bid must be accompanied by a deposit in the form in the form of a wire transfer, certified check or cashier's check and in an amount equal to 10% of the Cash Consideration contemplated by the Bid to be deposited in an account or accounts designated to be the Pre-Petition Agent and DIP Agent (collectively, the "<u>Agent</u>") to be held pursuant to orders entered in this case governing the use of Cash Collateral and debtor-in-possession financing (the "<u>Good Faith Deposit</u>").

(vii) <u>Minimum Bid Requirements</u>. Each Qualified Bidder's Bid or Combination Bid must have a Purchase Price that includes Cash Consideration that is at least three hundred thousand dollars ($300,000) greater than the sum of (A) the Cash Consideration provided under the Agreement, plus (B) the Break-Up Fee provided under the Agreement (the "<u>Minimum Initial Bid</u>").

(viii) <u>No Fees or Representations</u>. A Bid must not include or request that the Qualified Bidder be entitled to any transaction or Break-Up fee, expense

4

reimbursement, termination or similar type of fee or payment, and it shall include the acknowledgement and representation of the Qualified Bidder that (a) the purchase of the Acquired Assets is on an "as-is" and "with all faults" basis and without representations, warranties or guarantees, express, implied or statutory, written or oral, of any kind, nature or description, by the Debtors, their agents, their representatives or their estates, except as otherwise specifically provided in a definitive purchase agreement with the Debtors; and (b) the Qualified Bidder has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Acquired Assets, the financial performance of the Acquired Assets or the physical condition of the Acquired Assets, or the completeness of any information provided in connection therewith or in connection with the Auction, except as expressly stated in these Bid Procedures or the Agreement.

(ix) <u>Other Evidence</u>. Each Bid must contain evidence satisfactory to the Debtors that the bidder is reasonably likely (based on availability of financing, experience and other considerations) to, among other things, satisfy the standard to provide adequate assurance of future performance of any Contracts to be assumed and assigned under Section 365 of the Bankruptcy Code, be able to timely consummate a purchase of the Acquired Assets if selected as the Successful Bidder (as defined below).

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, as determined in the Debtors' reasonable discretion (taking into account the terms and conditions of any assumed debt obligations), and that satisfies the Bid Deadline requirement, shall constitute a qualified bid ("<u>Qualified Bid</u>"). In the event that a Bid is determined not to be a Qualified Bid in accordance with the conditions set forth above, the Qualified Bidder shall be notified promptly and shall be refunded its Good Faith Deposit (if any) within three (3) business days after such determination.

Notwithstanding anything in these Bidding Procedures to the contrary, the Stalking Horse Purchaser shall be deemed a Qualified Bidder and the Agreement shall be deemed to constitute a Qualified Bid.

### E. Bid Protections

The Debtors have agreed that the Debtors must, in the circumstances enumerated in the Agreement, pay to the Stalking Horse Purchaser the Break-Up Fee and the Bankruptcy Court has approved the Break-Up Fee. The payment of the Break-Up Fee shall be governed by the provisions of the Agreement and the Bidding Procedures Order. No Qualified Bidder other than the Stalking Horse Purchaser shall be entitled to a Break-Up fee, expense reimbursement or similar payment.

III. **Auction**

In the event that the Debtors receive at least one (1) Qualified Bid (other than the Agreement) by the Bid Deadline, the Debtors shall conduct an auction (the "Auction") of the Acquired Assets to determine the highest and otherwise best bid with respect to the Acquired Assets. No later than _____, 2011 at _____ p.m. (prevailing Eastern Time), the Debtors will notify all Qualified Bidders of (i) the highest or otherwise best Qualified Bid as of that time (the "Baseline Bid"), and (ii) the time and place of the Auction. The Auction shall commence at 11:00 a.m. (Prevailing Eastern Time) on _____, 2011 at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899.[4]

If the Debtors do not receive any Qualified Bids other than the Stalking Horse Purchaser's Agreement by the Bid Deadline, the Debtors will report the same to the Bankruptcy Court, will declare the Stalking Horse Purchaser the Successful Bidder, and will proceed with the sale transaction to the Stalking Horse Purchaser pursuant to the terms of the Agreement, upon entry of an order approving the sale of the Acquired Assets to the Stalking Horse Purchaser.

The Auction shall be conducted according to the following procedures, which may be modified or amended as announced by the Debtors from time to time on the record at the Auction, after consultation with their advisors and in consultation with and subject to the approval of the Agent and its advisors, provided that any such modified or amended procedures shall not be inconsistent with any order of the Bankruptcy Court or the Agreement.

A. **Participation in the Auction**

Only the Debtors, the Stalking Horse Purchaser, representatives of the Debtors' pre- and post-petition lenders, representatives of the Committee and any Qualified Bidder who has timely submitted a Qualified Bid (and professional advisors to each of these parties) may attend the Auction. The ability to attend the Auction does not entitle any person to participate as a bidder at the Auction other than the Stalking Horse Purchaser and any Qualified Bidder who has timely submitted a Qualified Bid (and professional advisors to such parties).

Only the Stalking Horse Purchaser and other Qualified Bidders may make subsequent Qualified Bids at the Auction in consultation with and subject to the approval of the Agent and its advisors. The Debtors and their professional advisors shall direct and preside over the Auction. Bidding at the Auction shall begin with the Baseline Bid, which, in the event such Baseline Bid is not that of the Stalking Horse Purchaser, shall be in an amount at least equal to the Minimum Initial Bid. All Bids made thereafter shall be Overbids (as defined below), shall be made and received on an open basis, and all material terms of each subsequent Bid shall be fully

---

[4] If the date or location of the Auction is changed, the Debtors will use reasonable efforts to provide prior notice by e-mail, facsimile or similarly expeditious means to (i) Qualified Bidders who have made Qualified Bids, (ii) counsel for the Stalking Horse Purchaser, (iii) counsel for the Debtors' pre- and post-petition lenders, (iv) counsel for the Committee, and (v) the Office of the United States Trustee (the "U.S. Trustee").

disclosed to all other Qualified Bidders and the Stalking Horse Purchaser. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid (as defined below).

Each Qualified Bidder will be required to affirm on the record at the Auction that they have not colluded with any other person with respect to the bidding prior to or at the Auction.

### B. Terms of Overbids

An "Overbid" is any Qualified Bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid that meets the following requirements: Any Qualified Bidder's initial Overbid shall include cash consideration that is at least one hundred thousand dollars ($100,000) in excess of the Baseline Bid, and each subsequent Overbid must made in increments of at least one hundred thousand dollars ($100,000) over the previous highest or best bid. The Stalking Horse Purchaser shall have the right to apply the Break-Up Fee as a credit against the Cash Consideration specified in any subsequent higher Qualifying Bid made by the Stalking Horse Purchaser at the Auction.

Each Overbid must comply with the conditions for a Qualified Bid set forth above other than the Minimum Initial Bid requirement. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors accept a higher Qualified Bid as determined by the Debtors in consultation with and subject to the approval of the Agent and its advisors as a further Overbid. The Debtors shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid. The Debtors will continue to accept Overbids at the Auction for a reasonable period of time or until Qualified Bidders decline to submit further Overbids, in the Debtors' reasonable discretion, and in consultation with and subject to the approval of the Agent and its advisors.

### C. Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed, and the Debtors, in consultation with their advisors, and in consultation with and subject to the approval of the Agent and its advisors, shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and (ii) immediately determine, in the Debtors' reasonable discretion, and in consultation with and subject to the approval of the Agent and its advisors (taking into account the terms and conditions of any assumed debt obligations) the highest or otherwise best offer for the Acquired Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"). The Debtors shall notify the Qualified Bidders participating in the Auction of the Successful Bid and the Successful Bidder upon making their determination. The Debtors shall also notify the Qualified Bidders participating in the auction of the next highest and best Qualified Bid (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder"). The Debtors shall present the Successful Bid to the Bankruptcy Court for approval at the Sale Hearing and may, in its discretion, and in consultation with and subject to the approval of the Agent and its advisors,

request authority to consummate a sale to the Back-Up Bidder on the terms of the Back-Up Bid to the extent the Successful Bidder fails to close the contemplated sale transaction in the required timeframe.

After the Auction is closed, the Bankruptcy Court will not reopen the Auction or accept additional bids unless it finds there were irregularities at the Auction that warrant such action.

### D. Failure to Close

In the event the Successful Bidder fails to consummate a sale with the Debtors as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtors shall: (i) retain the Successful Bidder's Good Faith Deposit as liquidated damages; and (ii) be authorized, but not required, to enter into a new purchase agreement with the Back-Up Bidder on the terms of the Back-Up Bid without further order of the Bankruptcy Court. The Back-Up Bid shall remain open until the first business day following the consummation of a sale transaction with the Successful Bidder, subject to any right to terminate such Back-Up Bid in the applicable purchase agreement.

### E. Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court, and Qualified Bidders shall be deemed to waive any right to a jury trial in connection with any disputes relating to the Auction and/or the construction and enforcement of the Qualified Bidder's Bid and related transaction documents, as applicable.

## IV. Acceptance of Successful Bid

The Debtors shall sell the Acquired Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing and the Agent has not objected to the sale based upon said Qualified Bid.

## V. Break-Up Fee

To the extent the Stalking Horse Purchaser is entitled to the Break-Up Fee pursuant to the terms of the Agreement and the Bidding Procedures Order, such payment shall be made from the proceeds of the sale to the Successful Bidder upon the closing of such sale.

## VI. Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on _____, 2011 at ____ Prevailing Eastern Time. The Stalking Horse Purchaser or other Successful Bidder, as applicable, as well as the Back-Up Bidder must produce a competent witness at the Sale Hearing (and any subsequent hearing) to provide testimony, if necessary, to

establish adequate assurance of future performance under the Assigned Agreements to be assigned to such bidder, to the extent required by section 365(b) of the Bankruptcy Code.

## VII. Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in an interest-bearing escrow account by _____. The Deposit of the Stalking Horse Purchaser, or the Good Faith Deposit of the Successful Bidder or the Back-Up Bidder, as applicable, shall be applied to the Purchase Price of such transaction at Closing. All Good Faith Deposits (together with interest accrued thereon) shall be returned to each Qualified Bidder not selected by the Seller as either the Successful Bidder or the Back-Up Bidder within three (3) business days of the closing of the Auction. If the Stalking Horse Purchaser is not selected by the Seller as either the Successful Bidder or the Back-Up Bidder, and no termination event has occurred under Section 11.1(c)(i) of the Agreement, the Deposit of the Stalking Horse Purchaser (together with interest accrued thereon) shall be returned within three (3) business days of the closing of the Auction. The Good Faith Deposit (together with interest accrued thereon) of the Back-Up Bidder shall be returned within three (3) business days following the closing of the transaction with the Stalking Horse Purchaser or other Successful Bidder (other than the Back-Up Bidder), as applicable.

## VIII. Modifications

The Debtors reserve their rights to modify these Bid Procedures in any manner that is not inconsistent with the Agreement or the Bidding Procedures Order and that will best promote the goals of the bidding process and to impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Acquired Assets, including, without limitation, modifying the requirements for a Qualified Bid, extending the deadlines set forth in these Bid Procedures, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, canceling the Auction, and rejecting any or all Bids, as set forth herein.

The Debtors, in their reasonable discretion and in consultation with and subject to the approval of the Agent and its advisors, may (a) determine which Qualified Bid, if any, is the highest or otherwise best offer, and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates and creditors.

3598293.7