# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>INTERNATIONAL GARDEN PRODUCTS, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-13207 (KJC)<br><br>Jointly Administered<br><br>RE: D.I. 324 |

## SUPPLEMENTAL DECLARATION OF JAY HULBERT IN SUPPORT OF DEBTORS' MOTION FOR ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF

I, Jay Hulbert, hereby declare under penalty of perjury as follows:

1.  I am the Debtors' Chief Executive Officer and am authorized to submit this declaration (this "Declaration") on behalf of the Debtors. I submit this Declaration in support of the Debtors' Motion for Orders: (I)(A) Approving Bid Procedures Relating to Sale of Substantially all of Debtors' Assets, (B) Scheduling a Hearing to Consider the Sale, (C) Approving the Form and Manner of Notice of Sale by Auction, (D) Establishing Procedures for Noticing and Determining Cure Amounts, and (E) Granting Related Relief; and (II)(A) Approving Asset Purchase Agreement and Authorizing the Sale of Substantially all of the Debtors' Assets Outside the Ordinary Course of Business, (B) Authorizing the Sale of Assets Free and Clear of all Liens, Claims, Encumbrances and Interests, (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and

---

[1] The Debtors are the following entities (followed by the last four digits of their tax identification numbers): International Garden Products, Inc. (5711), Weeks Wholesale Rose Grower (9716), California Nursery Supply (6835), Iseli Nursery, Inc. (6206), and Old Skagit, Inc. (2996).

(D) Granting Related Relief (the "Sale Motion").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein. If I were called upon to testify, I could and would testify to each of the facts set forth herein. This supplemental declaration supplements the declaration I executed on April 8, 2011 [D.I. 326] in support of the Sale Motion.

2. Since the filing of the Sale Motion, the Debtors have continued working with William Blair & Company L.L.C. ("William Blair") and their other professionals in conducting the marketing and sale process of the Debtors' businesses and assets in accordance with the terms of the Court's Order (A) Approving Bid Procedures Relating to Sale of Substantially All of the Debtors' Assets; (B) Scheduling a Hearing to Consider the Sale; (C) Approving the Form and Manner of Notice of Sale by Auction; (D) Establishing Procedures for Noticing and Determining Cure Amounts; and (E) Granting Related Relief (the "Bid Procedures Order"), dated April 21, 2011 [D.I. 366], and the related bidding and sale procedures approved thereunder (the "Bid Procedures").

3. I, along with other members of the Debtors' senior management, have been actively involved with and have overseen the Debtors' sale process and marketing efforts and their compliance with the Bid Procedures as part of those efforts. The Debtors and their professionals have fully complied, in good faith, with the terms and requirements of the Bid Procedures and the Bid Procedures Order.

4. As set forth in the Sale Motion, the Debtors initially designated IGP Acquisition LLC ("IGP Acquisition") as the stalking horse bidder for the sale of the Acquired Assets on terms proposed in the Asset Purchase Agreement included with the Sale Motion (the "Asset Purchase Agreement").

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Sale Motion.

5. Following approval of the Bid Procedures Order, the Debtors timely served all notices required under the Bid Procedures and Bid Procedures Order on all parties entitled to receive notice thereunder, with the assistance of the Debtors' claims and noticing agent, The Garden City Group, Inc., including with respect to the Auction for the Acquired Assets and the assumption and assignment of certain executory contracts and unexpired leases (the "Assigned Agreements") to IGP Acquisition (and related cure amounts).

6. The notices with respect to the assumption and assignment of the Assigned Agreements (the "Assumption and Assignment Notices") initially were filed and served on April 29, 2011, and amended versions of the Assumption and Assignment Notices were served on May 3, 2011. In connection with the service of the amended Assumption and Assignment Notices, the Debtors extended the time for objections to the Assumption and Assignment Notices through May 13, 2011.

7. Accordingly, the Debtors believe that all interested persons and entities have received a reasonable opportunity to object or be heard regarding the Sale Motion and related relief, in compliance with the Bid Procedures and the Bid Procedures Order.

8. Likewise, all parties that expressed an interest in bidding on the Acquired Assets received reasonable notice of the Auction and the Bid Procedures, along with other information supplied by the Debtors or William Blair sufficient to allow such parties to make an informed judgment on whether to bid on the Acquired Assets.

9. The Debtors received one bid for the Acquired Assets in addition to that of IGP Acquisition following entry of the Bid Procedures Order. The additional bid was submitted by Iseli Weeks Holding, Inc. ("IWHI"). IWHI subsequently modified its initial bid in response to questions and comments from the Debtors. The Debtors, along with their professionals,

carefully reviewed IWHI's modified bid and determined it to be a Qualified Bid in compliance with the terms of the Bid Procedures.

10. Upon determining IWHI's bid to be a Qualified Bid, the Debtors notified all required parties of the Debtors' designation of such bid as a Qualified Bid and provided notice that the Auction would proceed as scheduled, in accordance with the terms of the Bid Procedures.

11. The Debtors conducted the Auction on May 17, 2011 at the offices of Morris, Nichols, Arsht & Tunnell, LLP, 1201 North Market Street, Wilmington, Delaware 19801, in accordance with the terms and requirements of the Bid Procedures and the Bid Procedures Order.

12. Both IGP Acquisition and IWHI participated in the Auction and submitted multiple bids for the Acquired Assets. Bidding continued until IWHI declined to increase its bid above the last offer from IGP Acquisition. Accordingly, the Debtors, upon consultation with their professionals, and exercising their best business judgment, determined IGP Acquisition to be the "Successful Bidder" under the Bid Procedures, having increased the cash portion of its offer by $600,000 over that provided in its initial Asset Purchase Agreement.

13. The Debtors, exercising their best business judgment, and in consultation with their professionals, have determined that the final bid of IGP Acquisition received at the Auction (as embodied in the amended and restated Asset Purchase Agreement to be filed in connection with the final hearing on the Sale Motion), (i) is the highest and best offer the Debtors have received for the Acquired Assets, (ii) is fair and reasonable under the circumstances, (iii) is in the best interests of the Debtors' creditors and estates, and (iv) constitutes full and adequate consideration and reasonably equivalent value for the Acquired Assets. The Debtors believe

IGP Acquisition's amended and restated Asset Purchase Agreement will result in the highest net purchase price available for the Acquired Assets.

14. The Debtors have obtained all necessary corporate approvals to enter into the amended and restated Asset Purchase Agreement with IGP Acquisition.

15. IGP Acquisition's bid and the amended and restated Asset Purchase Agreement are the product of good faith, arms' length negotiations among the parties, and there has been no collusion between the parties. IGP Acquisition is not affiliated with, nor is it an insider of, the Debtors.

16. Because the Debtors understand that IGP Acquisition would not enter into the Asset Purchase Agreement other than through a sale of the Acquired Assets free and clear of all liens, claims, encumbrances, and interests, the Debtors believe that not selling the Acquired Assets free and clear of such liens, claims, encumbrances, and interests would adversely impact the Debtors' estates and would result in substantially less value to the Debtors' estates.

17. The Debtors also believe that the assumption and assignment of the Assigned Agreements in connection with the sale of the Acquired Assets to IGP Acquisition under the Asset Purchase Agreement, is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

18. Accordingly, the Debtors believe that approval of the sale of the Acquired Assets to IGP Acquisition in accordance with the terms of the amended and restated Asset Purchase Agreement is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

[Signature page follows]

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 18, 2011.

_____
Jay Hulbert